Lauriat, J.
Jonathan B. White (“White”) seeks to submit claims for wrongful termination and improper withholding of stock options against his former employer and affiliated companies, H&R Block Mortgage Corp., H&R Block, Inc., and H&R Block Financial Advisors, Inc. (collectively “Block”), to binding arbitra *281 tion pursuant to the terms of an employment agreement between the parties. Block filed this action and the present motion seeking to stay the arbitration.
On April 22, 1999, White signed a one-year “Employment, Noncompetition and Confidentiality Agreement” (“Agreement”) with Assurance Mortgage Corporation of America (“Assurance”), a company that H&R Block Mortgage Corp. later purchased. Block contends that the Agreement expired by its own terms on April 22, 2000, and was never renewed. Therefore, according to Block, a stay of arbitration is justified since White was not working under any agreement that afforded him a right to arbitration when he was terminated on June 14, 2001. Additionally, Block contends that the issue of stock options was never subject to arbitration. White asserts that Block extended his employment agreement in yearly increments. White claims that these extensions were communicated to him directly by Steven Edelstein, his superior at both Assurance Mortgage and Block, and that the extensions could also be inferred from Block’s conduct.
DISCUSSION
I.
The United States Supreme Court recently held that employment contracts were among those contracts which, with narrow exceptions, fell within the provisions of the Federal Arbitration Act (“FAA”) 9 U.S.C. §1 et seq. Circuit City Stores, Inc. v. Adams, 149 L.Ed.2d 234, 249 (2001). The FAA governs the arbitrability of employment disputes in state and federal court. Carpenter v. Pomerantz, 36 Mass.App.Ct. 627, 628 n. 3. (1994). The FAA, and decisions construing the statute, “creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.” Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). This body of law concludes that claims are arbitrable if they are within the scope of a written arbitration agreement that is otherwise valid and enforceable. Carpenter v. Pomerantz, 36 Mass.App.Ct. at 628.
However, the court must initially decide whether parties have agreed to arbitrate specific issues. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). There can be no assumption that the basic arbitrability of an agreement itself is a proper subject for arbitration absent “clear and unmistakable evidence” that the parties intended to include such an issue with the scope of arbitration. Coady v. Ashcroft & Gerel, 223 F.3d 1, 9 (1st Cir. 2000), quoting First Options, 514 U.S. at 944. However, “any doubts regarding arbitrability should be resolved in favor of coverage ‘unless it maybe said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.’ ” Mugnano-Bornstein v. Crowell, 42 Mass.App.Ct. 347, 351 (1997), quoting Peerless Pressed Metal Corp. v. International Union of Electrical, Radio and Machinist Workers, AFL-CIO, 451 F.2d 19, 20 (1st Cir. 1971).
General principles of contract law must be applied to determine whether a particular agreement calls for arbitration. Mugnano-Bornstein, 42 Mass.App.Ct. at 350. Among the applicable contract law principles is that which states that any ambiguities in the language should be construed against the drafter. Merrimack Valley National Bank v. Baird, 372 Mass. 721, 724 (1977). The court must also resolve any questions of arbitrability “with a healthy regard for the federal policy favoring arbitration.” Moses H. Cone Memorial Hospital, 460 U.S. at 24.
An examination of the arbitration agreement in question must proceed under these principles. The arbitration clause appears as section 8 of the Agreement executed between the parties on April 22, 1999. It provides, in pertinent part:
Arbitration. Except for equitable remedies sought to be enforced by the Employer pursuant to or in connection with sections 5, 6 or 7 hereof, any controversy or dispute arising out of or relating to this Agreement shall be settled solely and exclusively by arbitration. The parties hereto expressly waive their rights to bring any such controversy or dispute in a court of law.
On its face, the Agreement reserves certain matters as outside the scope of arbitration. Section 5, entitled “Certain Covenants of Employee,” deals with White’s acknowledgment of the special knowledge and trust he incurs as a company employee as well as non-competition agreements for the period he is employed by, and for one year after leaving, the company. Section 6, entitled “Confidentiality,” generally describes the information the company designates as confidential and White’s duty to the company with regard to that information. Section 7, entitled “Certain Remedies,” provides the company with equitable relief against White for any breach of Sections 5 and 6, and requires White to waive all requirements that the company prove that a breach caused irreparable injury or that there was no adequate remedy at law.
Having specifically placed these matters outside the scope of arbitration, it is clear that Assurance could have done the same with any other matter as well. The Agreement contains other provisions, labeled by section, as follows: (2) Term, (3) Compensation, and (4) Termination. These clauses do not fall within the specifically exempt provisions, and therefore should be construed as fit matters for arbitration so long as they are “arising out of or relating to this Agreement.” Keeping in mind that any ambiguities must be construed against Block, as successor to Assurance, the drafter in this case, and construed in favor of arbitration as a policy matter, the court concludes there is “clear and unmistakable evidence” that the parties intended to submit matters of term, compensation, and termination to the arbitrator in the event of a *282 dispute over these issues. This conclusion is supported by the fact that the language of the arbitration clause does not confine itself to matters contained within the four corners of the document, but extends to any disputes “relating to” the Agreement unless specifically exempted. Therefore, even the question of the Agreement’s continuing viability on the date of White’s termination must be submitted to the arbitrator.
A different conclusion would result if Block could show that White could not possibly prevail on his claim that the Agreement was still in force when he was terminated. The court, in such an instance, could determine that the contract, as well as the arbitration clause, was fully satisfied. However, Block is not entitled to judgment as a matter of law on this question because disputed questions of material fact remain unresolved. A party can demonstrate that an employment contract with a definite termination date can be extended by annual renewals. See Kravetz v. Merchants Distributors, Inc., 387 Mass. 457, 460 (1982). In addition, a party has recourse to estoppel theories to construe the parties’ intent in the context of private employment contracts. See McAndrew v. School Committee of Cambridge, 20 Mass.App.Ct. 356, 359 (1985). The court expresses no opinion as to whether White can clear the hurdles such claims present, but on the basis of his own affidavit and Block’s June 14, 2001 termination letter, in which repeated references to the Agreement are couched, White has raised issues of material fact sufficient to preclude judgment as a matter of law. As a matter “relating to” the Agreement, these issues of fact should be considered by the arbitrator.
II.
Block contends that even if termination and compensation are arbitrable, the issue of stock options is governed solely by H&R Block Stock Option Agreements and H&R Block Long-Term Executive Compensation Plans (collectively “Plan”). “Language in a provision of one writing may be controlled by provisions of another writing when a single transaction is involved.” Katz v. Bello, 16 Mass.App.Ct. 178, 181 (1983). In construing the language of such documents, the court must keep in mind the policy favoring arbitration. However, the search is still governed by the need to find “clear and unmistakable evidence” that the parties agreed to arbitrate this matter.
Section 3 of the Agreement, entitled “Compensation,” refers to compensation and benefits set forth in an attached Schedule 1. Section G of Schedule 1, which addresses stock options, provides:
The Company shall cause Block to issue to the Employee an employee stock option . . . pursuant to the terms and conditions of a designated Block stock option plan . . . Pursuant to and consistent with the terms of such a plan, the Stock Option shall have an exercise price equal to the market price on the date of grant. . . and will vest in equal one-third portions annually over the three year period immediately following June 30, 1999.
Thus, the Agreement simply provides that Block would make stock options available to White. However, Block’s stock options are plainly governed by other documents, and White’s participation is specifically subject to the terms and conditions of those documents.
An examination of those documents does not disclose an arbitration clause. Moreover, the Plan’s language takes the stock option process outside the realm of White’s employment agreement by stating:
No employee of the Company or any other person shall have any claim or right to be granted an Award under the Plans, and no recipient of an award shall have or acquire any right under the Plans except as such as are evidenced by a duly executed Award Contract.
In addition, the June 30, 2000, version of the Plan anticipates judicial intervention in actions to determine whether provisions of the plan are enforceable. Taken together, the court cannot conclude that unmistakable evidence exists sufficient to show that stock options are a fit subject for arbitration between Block and White. The Plan, unlike the Agreement, does not exempt some matters from arbitration nor does it reserve any issue for arbitration. As far as any intent of the parties can be discerned here, the recourse for dispute resolution remains within traditional judicial process.
White contends that summary judgment is inappropriate where an employee alleges a breach of contract based on the implied covenant of good faith and fair dealing when an employer’s actions prevent the employee’s stock options from vesting. However, the court is not considering a summary judgment motion, but rather only a motion to stay arbitration. Breaches of these implied covenants in an employment contract action focus on issues of compensation for work already performed. Claney v. G.F. Wright Steel & Wire Co., No.: 950239 (Mass.Super. April 1, 1998) (Fecteau, J.). Actions concerning unvested stock options are not related to compensation. Harrison v. Netcentric Corporation, 433 Mass. 465, 475-76 (2001). There is currently no evidence before this court that White had any unvested stock options. Therefore, White’s contentions fail to establish a basis for submitting the issue of stock options to arbitration.
ORDER
For the forgoing reasons, the Plaintiffs’ Motion to Stay Arbitration is DENIED with respect to defendant’s wrongful termination claim, and ALLOWED with respect to defendant’s stock options claim.